IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KENNETH TRIMBLE, | ) | 4:08CV3116 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

This action was removed to federal court by the defendant, BNSF Railway Company, on the basis of diversity jurisdiction. *See* 28 U.S.C. §§ 1332(a), 1441(a). The plaintiff, Kenneth Trimble, is a former BNSF employee who alleges that he was fired by a subsequent employer, ALSTOM Transportation, Inc., at the request of BNSF. Trimble claims that BNSF (1) intentionally interfered with his employment relationship with ALSTOM and (2) violated the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. §§ 48-1101 to 48-1125.

With respect to the second claim only, BNSF has moved for judgment on the pleadings. *See* Fed.R.Civ.P. 12(c).[1] BNSF argues that no actionable NFEPA claim is stated because Trimble (1) was not employed by BNSF at the time of the alleged violation, (2) has not adequately pleaded that he is a member of a protected class, and

---

[1] When considering a Rule 12(c) motion, the court views all facts pleaded by the nonmoving party as true and grants all reasonable inferences in favor of that party. *See Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008). "Judgment on the pleadings is appropriate only where the moving party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a matter of law." *Potthoff v. Morin*, 245 F.3d 710, 715 (8th Cir. 2001).

(3) has not alleged exhaustion of administrative remedies.  BNSF's motion will be granted in part, but Trimble will be allowed a reasonable opportunity to file an amended complaint.

The operative allegations of Trimble's complaint are as follows:

1.      That at all relevant times hereto the Plaintiff, Kenneth Trimble, was a resident and citizen of Alliance, Box Butte County, Nebraska.

2.      That at all relevant times hereto, the Defendant, BNSF Railway Company ("BNSF"), was and is a foreign corporation licensed in Delaware and qualified and registered to do business in the State of Nebraska.

3.      On or about August 1, 2007, Plaintiff entered into an employment contract with ALSTOM Transportation Inc. ("ALSTOM").

4.      ALSTOM was a contractor for BNSF.[2]

5.      On or about September 17, 2007, Plaintiff began his employment duties for ALSTOM.

---

[2] BNSF admits in its answer that it has a contract with ALSTOM and "alleges that said contract is for ALSTOM to provide BNSF with certain locomotive inspection, maintenance and repair services, parts, components and other materials required to perform necessary maintenance and repair of locomotives and for ALSTOM to provide the direction, supervision and instruction of BNSF employees at BNSF's Alliance Facility to perform the repair labor."  (Filing 4 at CM/ECF p. 1, ¶ 4.)  BNSF also alleges that it "became aware that ALSTOM had employed plaintiff to provide the direction, supervision, and instruction of BNSF employees at BNSF's Alliance Facility who would perform the repair labor on the locomotives specified in the contract between ALSTOM and BNSF."  (Id. at CM/ECF p. 2, ¶ 8.)  BNSF denies that it requested ALSTOM to terminate the plaintiff's employment.  (Id.)

6.     Plaintiff was employed by BNSF previous to his employment with ALSTOM.  During his employment with BNSF, Plaintiff suffered work related injuries.

7.     Plaintiff filed a claim for his personal injuries and damages with BNSF which was ultimately settled out of court.

8.     Defendant became aware of the employment relationship between Plaintiff and ALSTOM and interfered with said relationship by demanding ALSTOM terminated [sic] Plaintiff.

9.     On or about October 27, 2007, Plaintiff received a letter from ALSTOM informing him that he was terminated as of November 2, 2007.

10.     Plaintiff was informed he was being terminated at the request of BNSF.

(Filing 1-3, Attach 2., at CM/ECF pp. 1-2.)  Trimble simply alleges for his second claim that "Defendant's actions deprived Plaintiff of his rights not to be discriminated against due to the Defendant's perceiving him as disabled, and/or having a record of a disability as protected by the laws of the State of Nebraska as set forth in §48-1101 *et.* [sic] *seq.*"  (*Id.*, at p.2, ¶ 15.)

The Nebraska Fair Employment Practice Act declares that "[i]t shall be an unlawful employment practice for an employer . . . [t]o fail or refuse to hire, to discharge, or to harass any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, disability, marital status, or national origin."  Neb. Rev. Stat. § 48-1104(1).  More particularly, the Act provides that "[i]t shall be an unlawful employment practice for a covered entity to discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and

3

other terms, conditions, and privileges of employment." Neb. Rev. Stat. § 48-1107.01.
"Disability" is defined as "(a) a physical or mental impairment that substantially
limits one or more of the major life activities of such individual, (b) a record of such
an impairment, or (c) being regarded as having such an impairment." Neb. Rev. Stat.
§ 48-1102(9). An "employer" is "a person engaged in an industry who has fifteen or
more employees . . . [or] any agent of such a person[.]" Neb. Rev. Stat. § 48-1102(2).
A "covered entity" is "an employer, an employment agency, a labor organization, or
a joint labor-management committee." Neb. Rev. Stat. § 48-1102(5).

The only case authority cited by Trimble in support of his NFEPA claim is
*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997), wherein the United States Supreme
Court held that a former employee can sue his former employer for retaliatory
discrimination under Title VII of the Civil Rights Act of 1964, as amended.[3]  The
plaintiff in *Robinson* complained that his former employer gave him a negative job
reference because he had filed an EEOC charge claiming that his firing was
discriminatory.  While the Nebraska Supreme Court most likely would construe the
NFEPA's anti-retaliation provision[4] in a similar manner, see *Orr v. Wal-Mart Stores,
Inc.*, 297 F.3d 720, 723 (8th Cir. 2002) ("In construing the NFEPA, Nebraska courts

---

[3] Section 704(a) of the Act provides that "[i]t shall be an unlawful employment
practice for an employer to discriminate against any of his employees or applicants
for employment . . . because he has opposed any practice made an unlawful
employment practice by this subchapter, or because he has made a charge, testified,
assisted, or participated in any manner in an investigation, proceeding, or hearing
under this subchapter." 42 U.S.C. § 2000e-3(a).

[4] The Nebraska Fair Employment Practice Act provides that "[i]t shall be an
unlawful employment practice for an employer to discriminate against any of his or
her employees or applicants for employment . . . because he or she (1) has opposed
any practice made an unlawful employment practice by the Nebraska Fair
Employment Practice Act, (2) has made a charge, testified, assisted, or participated
in any manner in an investigation, proceeding, or hearing under the act, or (3) has
opposed any practice or refused to carry out any action unlawful under federal law
or the laws of this state." Neb. Rev. Stat. § 48-1114.

have looked to federal decisions, because the NFEPA is patterned after Title VII and the ADA."), Trimble is not claiming retaliation. Rather, he is claiming that he was discharged by another employer because BNSF believed him to be disabled or knew that he had a record of disability.

There is a line of federal cases beginning with *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C.Cir. 1973), which hold that a defendant who meets the definition of an "employer" under Title VII can be sued for discrimination if the defendant has interfered with an individual's employment opportunities with a third party, so long as the defendant controls access to those employment opportunities. As the court noted in *Sibley*, Title VII (like the NFEPA) makes it unlawful for an employer to discriminate against "any individual" with respect to compensation, terms, conditions, or privileges of employment. *See* 42 U.S.C. § 2000e-2(a)(1). "The Act defines 'employee' as 'an individual employed by an employer,' but nowhere are there words of limitation that restrict references in the Act to 'any individual' as comprehending only an employee of an employer.[5]  Nor is there any good reason to confine the meaning of 'any individual' to include only former employees and applicants for employment, in addition to present employees. Those words should, therefore, be given their ordinary meaning so long as that meaning does not conflict with the manifest policy of the Act." *Sibley*, 488 F.2d at 1341 (holding that male private duty nurse could sue hospital for discrimination under Title VII for refusing to refer him to female patients for employment).

Although neither party discusses the *Sibley* line of cases, Trimble notes in his brief that the NFEPA provides that disability discrimination includes "[p]articipating in a contractual or other arrangement or relationship that has the effect of subjecting a qualified individual with a disability to discrimination in the application or

---

[5] The NFEPA uses the same definition of "employee". *See* Neb. Rev. Stat. § 48-1102(7).

employment process[.]" Neb. Rev. Stat. § 48-1107.02(2).[6]  BNSF does not dispute that its contractual relationship with ALSTOM could give rise to liability under this section, but instead simply argues in its reply brief that Trimble has failed to allege that he is a "qualified individual with a disability."[7]  I agree that this is an essential element of Trimble's disability discrimination claim, regardless of whether it is based on an alleged violation of § 48-1107.01 or § 48-1107.02(2).[8]  Because Trimble has not alleged that he was capable of performing the essential functions of his job at ALSTOM, with or without a reasonable accommodation, the complaint fails to state a claim upon which relief can be granted.  *See* Fed.R.Civ.P. 12(h)(2)(B) (failure to state a claim upon which relief can be granted may be raised by a Rule 12(c) motion); *Brown v. Simmons*, 478 F.3d 922, 923 (8th Cir. 2007) ("To state a claim upon which

---

[6] In this regard, the NFEPA differs significantly from the Americans with Disabilities Act, which defines the term "discriminate" to include "participating in a contractual or other arrangement or relationship that has the effect of subjecting *a covered entity's qualified applicant or employee* with a disability to the discrimination prohibited by this subchapter[.]" 42 U.S.C. § 12112(b)(2) (emphasis supplied).  Because this ADA section only applies to the covered entity's own employees or applicants, "[a] covered entity is not liable for the actions of the other party or parties to the contract which only affect that other party's employees or applicants." 29 C.F.R. § 1630.6(c).  The NFEPA is not so limited.

[7] "Qualified individual with a disability shall mean an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Neb. Rev. Stat. § 48-1102(10)(a).

[8] To the extent there may be a conflict between § 48-1104(1) (which does not include the "qualified individual with a disability" language) and § 48-1107.01, the latter statute, which is both newer and more specific, is controlling. *See Betterman v. State, Dept. of Motor Vehicles*, 728 N.W.2d 570, 583 (Neb. 2007) ("To the extent that a conflict exists between statutes on the same subject, specific statutes control over general statutes.").

relief can be granted, each element of the claim must be pled in the complaint.").[9]  I therefore will grant BNSF's motion, but will also grant Trimble leave to amend to allege that he is a qualified individual with a disability.

BNSF also complains that Trimble has not alleged that the work-related injuries he sustained as a BNSF employee were disabling, and "has not alleged in what manner BNSF regarded Trimble as disabled, i.e., what physical or mental impairment BNSF regarded Trimble to possess and which of Trimble's major life activities were substantially limited by Trimble's perceived physical or mental impairment."  (Filing 8, at CM/ECF pp. 5-6.)  This level of detail is unnecessary under federal pleading practice.  *See* Fed.R.Civ.P. 8(a)(2) (only requiring that the complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief."); *E.E.O.C. v. Northwest Airlines, Inc.*, 216 F.Supp.2d 935, 939 (D.Minn. 2002) (noting that four circuit courts have ruled that an ADA plaintiff, at the pleading stage, is not required to explicitly assert a substantially limited major life activity).  Trimble has sufficiently alleged that he is a member of a protected class under the NFEPA by claiming that he was perceived to be disabled and has a record of disability.  BNSF answered the complaint without first requesting that it be made more definite, *see* Fed.R.Civ.P. 12(e), and has even alleged that when Trimble's personal injury claims were settled, in 1992, he signed a general release providing that he was forever and permanently disabled from working for BNSF.  If additional information is needed by BNSF, it can be obtained through discovery.

Finally, BNSF argues that Trimble's complaint is deficient because there is no allegation that his administrative remedies have been exhausted.  This argument is without merit.  The complaint does not purport to have been filed under the NFEPA; it is merely alleged that BNSF violated Trimble's "rights not to be discriminated against . . . as set forth in [the NFEPA]."  (Filing 1-3, Attach 2., at CM/ECF p.2,

---

[9] It is not necessary, however, to allege a prima facie case of employment discrimination. *See* Swierkiewicz v. Sorema N. A., 534 U.S. 506, 515 (2002).

¶ 15.)  Such a claim is directly actionable under Neb. Rev. Stat. § 20-148,[10] with no requirement that administrative remedies be invoked or exhausted.[11]  *See Goolsby v. Anderson*, 549 N.W.2d 153, 157 (Neb. 1996).  There is also no requirement that a plaintiff specifically plead § 20-148 when bringing a claim to redress NFEPA violations.  *See Hall v. Hormel Foods*, No. 8:98CV304, 2000 WL 35621752, *5 (D.Neb. Mar. 14, 2000), *aff'd*, 7 Fed. Appx. 541 (8th Cir. 2001).

Accordingly,

IT IS ORDERED that the defendant's motion for judgment on the pleadings (filing 5) is granted to the following limited extent, but is otherwise denied:

1.   The court finds the plaintiff's "second cause of action" (paragraphs 14 and 15 of the plaintiff's complaint) fails to state a claim upon which relief can be granted because the plaintiff has failed to allege that he is a "qualified individual with a disability" as defined in the Nebraska Fair Employment Practice Act.

---

[10] Section 20-148 is a procedural statute which provides that "[a]ny person or company, as defined in section 49-801, except any political subdivision, who subjects or causes to be subjected any citizen of this state or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action or other proper proceeding for redress brought by such injured person."  Neb. Rev. Stat. § 20-148

[11] However, if a discrimination charge is filed with the Nebraska Equal Opportunity Commission under the NFEPA, then suit must be filed within 90 days after the complainant receives notice of the last action the NEOC will take on the charge.  *See* Neb. Rev. Stat. § 48-1120.01.  The complainant also has the option of filing suit before the administrative proceedings are dismissed by the NEOC. *See* Neb. Rev. Stat. § 48-1119(4).

2.      The plaintiff is granted leave to file an amended complaint, on or before
         August 1, 2008, in order to correct this pleading deficiency.

3.      If the plaintiff does not file an amended complaint by August 1, 2008,
         the "second cause of action" shall stand dismissed without further order
         of the court.  Such dismissal shall not constitute a final judgment under
         Federal Rule of Civil Procedure 54(b).

July 17, 2008.                          BY THE COURT:

                                        s/ *Richard G. Kopf*
                                        United States District Judge

9