IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KENNETH TRIMBLE, | ) | 4:08CV3116 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

Before suffering an on-the-job back injury in June 1991, the plaintiff, Kenneth Trimble, was employed by Burlington Northern Railroad Company ("BN"), the predecessor of the defendant, BNSF Railway Company. The personal injury claim was settled in October 1992, with Trimble acknowledging that he was permanently disabled from returning to work for BN and releasing all claims arising from or in any way related to his employment with BN. In August 2007, Trimble was hired by a BNSF contractor, Alstom Transportation, Inc., to be a production supervisor at the same facility where he previously worked for BN. Trimble alleges that he was terminated by Alstom in October 2007 at the request of BNSF.

In this diversity action Trimble claims that BNSF (1) intentionally interfered with his employment relationship with Alstom and (2) violated the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. §§ 48-1101 to 48-1125, by discriminating against him on the basis of disability. BNSF has moved for summary judgment, arguing that (1) both claims are barred by the release Trimble executed in October 1992, (2) Trimble, by acknowledging his permanent disability in the release, is equitably estopped from claiming that he is qualified to work at the BNSF facility, (3) the intentional tort claim fails because BNSF's actions were justified, and (4) the NFEPA claim fails because BNSF had a legitimate, nondiscriminatory reason for its

action. BNSF's motion for summary judgment will be granted with respect to the final contention, but in all other respects will be denied.

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)). Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party

2

> has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Rule 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

BNSF has moved to strike paragraph 8 of Trimble's declaration in opposition to the summary judgment motion, in which he states that "[s]oon after I began employment, my Alstom supervisor told me that someone at BNSF alleged I was dealing and using drugs, which was untrue, so I did a drug test to clear up any misconceptions." (Filing 31-2, p. 2, ¶ 8.) BNSF objects to this statement "for the reason that it is immaterial and impertinent, and that it is scandalous." (Filing 33, p. 1, ¶ 1.) The objection is overruled and the motion to strike will be denied.[1] BNSF has also moved to strike various portions of Trimble's opposing brief, including five paragraphs of his "statement of undisputed material facts" and three sections of his

---

[1] Additional objections to Trimble's declaration are raised in BNSF's brief filed in support of the motion to strike. These objections will not be considered in ruling on the motion to strike. *See* NECivR 7.1(a) & (a)(1)(A) ("A party making a motion shall state the basis for the motion and the specific relief requested. . . . The brief shall state concisely the reasons for the motion and cite the authorities relied upon."). However, to the extent that Trimble's declaration fails to satisfy the requirements of Federal Rule of Civil Proedure 56(e)(1) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."), it will not be considered in ruling on BNSF's motion for summary judgment.

argument. "A motion to strike is not the proper way to assert one's substantive disagreement" with the opposing party's position. *McNeil v. City of Omaha*, No. 8:07CV143, 2008 WL 4000813, *4 (D.Neb. Aug. 26, 2008). Also, the motion is unnecessary; if Trimble's statements or arguments are not supported by the record, or reference inadmissible evidence, they will not be accepted by the court.

### *Settlement Agreement*

Trimble objects that the release he executed in October 1992 in settlement of his personal injury claim is not admissible under Federal Rule of Evidence 408. This objection is groundless. The rule only prohibits using evidence of a compromise "to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction[.]" Fed.R.Evid. 408(a). BNSF is using the settlement agreement to defend itself.

The release states in pertinent part:

GENERAL RELEASE

1. In consideration of [redacted], . . . I, KENNETH E. TRIMBLE, hereby release and forever discharge BURLINGTON NORTHERN RAILROAD COMPANY, and to the same extent as if expressly named herein, its predecessors, successors, assigns, lessors, officers, companies, agents, and employees, and all other persons whomsoever from any and all claims and liabilities of every kind and nature, INCLUDING CLAIMS FOR INJURIES, IF ANY, WHICH ARE UNKNOWN TO ME AT THE PRESENT TIME resulting from accidents occurring at or near Alliance, Nebraska, on or about June 2, 1991, . . ..

2. In further consideration of this settlement, it is understood the injuries, I, KENNETH E. TRIMBLE, have sustained will forever and permanently disable me from returning to work for BURLINGTON

> NORTHERN RAILROAD COMPANY and any of its subsidiaries or successors, and I hereby release said Company from all claims known or unknown, whether based on federal or state law, including, but not limited to, personal injury, labor claims, employment practices, disability, and other claims arising from or in any way related to my employment with BURLINGTON NORTHERN RAILROAD COMPANY, including any claim for present and future reinstatement which I hereby expressly waive and release.

(Filing 30-6, p. 5.)

A settlement agreement is subject to the general principles of contract law; the terms of a release must be accorded their plain and ordinary meaning as the ordinary and reasonable person would understand them. *See Thrower v. Anson*, 752 N.W.2d 555, 561 (Neb. 2008). A contract is construed to give effect to the parties' intentions at the time the writing was made. *See McCord & Burns Law Firm, LLP v. Piuze*, 752 N.W.2d 580, 587 (Neb. 2008). It is clear that BN and Trimble intended not only to settle the personal injury claim, but also to effectuate a general release of all claims "arising from or in any way related to" Trimble's employment with BN.

> "Arise" has been defined as "[t]o spring up, originate, to come into being . . .." Black's Law Dictionary 108 (6th ed. 1990). When interpreting the phrase "arising out of the use" in an insurance contract, the Nebraska Supreme Court held that such words are very broad, general, and comprehensive terms, and are ordinarily understood to mean originating from, growing out of, or flowing from. *National Union Fire Ins. Co. v. Bruecks,* 179 Neb. 642, 139 N.W.2d 821 (1966).[2] The court cited with approval the following language of the Pennsylvania Supreme Court: "'[A]rising out of' means causally

---

[2] The Nebraska Supreme Court held in *Bruecks* that an injury sustained by a driver due to the accidental discharge of loaded gun in hands of a minor passenger, who was being transported home after a hunting trip, was not an accident "arising out of the use" of the automobile.

5

connected with, not proximately caused by, and that a 'but for' causation, that is, a cause and result relationship, is enough to satisfy this provision of the policy." 179 Neb. at 649, 139 N.W.2d at 827 (citing *Mfrs. Cas. Ins. Co. v. Goodville M. Cas. Co.*, 403 Pa. 603, 170 A.2d 571 (1961)).

*Hammond v. Nemaha County*, 581 N.W.2d 82, 87 (Neb.App. 1998).

BNSF argues that the present action arises from Trimble's employment with BN because "[i]f Trimble had not been previously employed by BN, BNSF would never have taken the actions it did to enforce Trimble's agreement because the agreement would not have existed." (Filing 29, p. 6.) This is invalid reasoning.

To prevail on his intentional interference claim, Trimble must prove that BNSF's actions were *not* justified by the release or by any other reasons cited by BNSF, such as his allegedly poor safety record while working for BN. Without the release or the history of work-related accidents, Trimble would have a much easier case against BNSF. Similarly, Trimble's past employment by BN is not an essential element of his NFEPA claim for disability discrimination; the release and work history are only material to BNSF's affirmative defense that it had legitimate, non-discriminatory reasons for its actions.[3] In summary, there is no "but for" causation between Trimble's past employment by BN and the present action.

> It is well understood that "[t]he ordinary meaning of [the phrase 'relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (quoting Black's Law Dictionary

---

[3] Trimble also makes an argument in his brief that BNSF violated the NFEPA because of the manner in which it maintained his medical records. This claim, which has not been pleaded by Trimble, may arise from or relate to his employment at BN. The claim will be discussed in more detail in the final section of this memorandum.

> 1158 (5th ed.1979)). *Accord Contractors Ass'n v. West Virginia DPS*, 189 W.Va. 685, 434 S.E.2d 357 (1993). *Compare In re Estate of Andersen*, 253 Neb. 748, 572 N.W.2d 93 (1998).
>
> Other courts have stated that "relating to" means "in respect to; in reference to; in regard to." *Snowden v. School Dist. No. 401*, 38 Wash.2d 691, 698, 231 P.2d 621, 625 (1951). *See, also, Harris v. State*, 260 Ark. 646, 543 S.W.2d 459 (1976) (en banc).
>
> It has also been stated that "[t]he ordinary meaning of 'relating to' is that there is a connection between two subjects, not that the subjects have to be the same." *Contractors Ass'n v. West Virginia DPS*, 189 W.Va. at 697, 434 S.E.2d at 369. *See, also, Matter of City of New York (Town of Hempstead)*, 125 A.D. 219, 109 N.Y.S. 652 (1908), *aff'd* 192 N.Y. 569, 85 N.E. 1117, *motion to amend remittitur denied* 194 N.Y. 587, 88 N.E. 1134 (1909).

*Central States Foundation v. Balka*, 590 N.W.2d 832, 837 (Neb. 1999).

While "relating to" is broader in scope than "arising from", Trimble's claims are not made in respect to, in reference to, in regard to, or in connection with his past employment at BN. Rather, they concern BNSF's role in the termination of his employment by Alstom, and are not barred by the release. *See Yates v. Kinney,* 51 N.W. 230, 231 (Neb. 1892) (release of all claims "pertaining to the taking of certain corn" by tenant did not include malicious prosecution claim that tenant brought against landlord for causing tenant to be charged with larceny for taking such corn).

Even if it were reasonable to conclude that Trimble's claims arose from or relate to his past employment at BN, the allegedly tortious and unlawful conduct by BNSF did not occur until 15 years after Trimble ceased being a BN employee, and could not have been within the contemplation of the parties when the general release was executed. "Like any contract, the scope of a release is determined by the parties' intent when they sign it." *Joe v. First Bank System, Inc.*, 202 F.3d 1067, 1070 (8th

7

Cir. 2000). *See also Watmore v. Ford*, 425 N.W.2d 612, 615 (Neb. 1988) (general rules governing the construction of contracts apply to written releases; release will be construed to effectuate intention of the parties as gathered from contents of the document), *overruled on other grounds by Landon v. Pettijohn*, 438 N.W.2d 757, 759-60 (Neb. 1989). "General words in a release are sufficient to bar a claim which had accrued at the date of the execution of the release, or a claim known to exist by the party signing it[,]" *Schmidt v. City of Lincoln*, 37 N.W.2d 500 (Neb. 1949), but will not bar a claim that had not accrued at the date of signing the release, where the plaintiff had no knowledge that then or in the future such a claim would exist.[4] *See Armbruster v. Stanton-Pilger Drainage Dist.*, 100 N.W.2d 781, 794-95 (Neb. 1960).

### *Equitable Estoppel*

BNSF also points to a statement in the release that "[i]n further consideration of this settlement, it is understood the injuries . . . TRIMBLE . . . sustained will forever and permanently disable [him] from returning to work for BURLINGTON NORTHERN RAILROAD COMPANY and any of its subsidiaries or successors," (filing 30-6, p. 5), and argues that Trimble is equitably estopped from asserting that he is capable of performing the essential functions of Alstom's production supervisor position while working at the BNSF facility, which is an essential element of his

---

[4] The document Trimble signed releases "all claims known or unknown," but does not purport to release any future claims except for reinstatement. Even if the release contained language releasing future claims, however, it has been held that an employee's rights under Title VII are not susceptible of prospective waiver. *See Richardson v. Sugg,* 448 F.3d 1046, 1054-57 (8th Cir. 2006). The Nebraska Supreme Court presumably would apply the same rule to NFEPA claims. *See Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 723 (8th Cir. 2002) ("In construing the NFEPA, Nebraska courts have looked to federal decisions, because the NFEPA is patterned after Title VII and the ADA.").

8

NFEPA claim.[5] "Equitable estoppel is a bar which precludes a party from denying or asserting anything to the contrary of those matters established as the truth by his own deeds, acts, or representations." *Berrington Corp. v. State Dept. of Revenue*, 765 N.W.2d 448, 455 (Neb. 2009). "The elements of equitable estoppel are, as to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts, or at least which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts." *Id.* "As to the other party, the elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be

---

[5] The Nebraska Fair Employment Practice Act declares that "[i]t shall be an unlawful employment practice for an employer . . . [t]o fail or refuse to hire, to discharge, or to harass any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, disability, marital status, or national origin." Neb. Rev. Stat. § 48-1104(1). More particularly, the Act provides that "[i]t shall be an unlawful employment practice for a covered entity to discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." Neb. Rev. Stat. § 48-1107.01. "Disability" is defined as "(a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual, (b) a record of such an impairment, or (c) being regarded as having such an impairment." Neb. Rev. Stat. § 48-1102(9). "Qualified individual with a disability" means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Neb. Rev. Stat. § 48-1102(10)(a). An "employer" is "a person engaged in an industry who has fifteen or more employees . . . [or] any agent of such a person[.]" Neb. Rev. Stat. § 48-1102(2). A "covered entity" is "an employer, an employment agency, a labor organization, or a joint labor-management committee." Neb. Rev. Stat. § 48-1102(5).

estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his or her injury, detriment, or prejudice." *Id.* While the statement in the release may have evidentiary value as an admission against interest, it is not necessarily inconsistent with Trimble's claim that he was discriminated against on the basis of disability.

As discussed in the court's previous memorandum and order entered with respect to BNSF's motion to dismiss Trimble's original complaint, there is a line of federal cases beginning with *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C.Cir. 1973), which hold that a defendant who meets the definition of an "employer" under Title VII can be sued for discrimination if the defendant has interfered with an individual's employment opportunities with a third party, so long as the defendant controls access to those employment opportunities. As the court noted in *Sibley*, Title VII (like the NFEPA) makes it unlawful for an employer to discriminate against "any individual" with respect to compensation, terms, conditions, or privileges of employment. *See* 42 U.S.C. § 2000e-2(a)(1). "The Act defines 'employee' as 'an individual employed by an employer,' but nowhere are there words of limitation that restrict references in the Act to 'any individual' as comprehending only an employee of an employer.[6] Nor is there any good reason to confine the meaning of 'any individual' to include only former employees and applicants for employment, in addition to present employees. Those words should, therefore, be given their ordinary meaning so long as that meaning does not conflict with the manifest policy of the Act." *Sibley*, 488 F.2d at 1341 (holding that male private duty nurse could sue hospital for discrimination under Title VII for refusing to refer him to female patients for employment). The NFEPA additionally provides that disability discrimination includes "[p]articipating in a contractual or other arrangement or relationship that has the effect of subjecting a qualified individual with a disability

---

[6] The NFEPA uses the same definition of "employee". *See* Neb. Rev. Stat. § 48-1102(7).

to discrimination in the application or employment process[.]" Neb. Rev. Stat. § 48-1107.02(2).[7] Thus, regardless of whether Trimble is claiming that BNSF violated § 48-1107.01 or § 48-1107.02(2), no direct employment relationship is required. The statement in the release that Trimble was "permanently disable[d] . . . from returning to work for [BN]" does not prevent him from claiming that he was qualified to work for BNSF's contractor.

### *Tortious Interference Claim*

"To succeed on a claim for tortious interference with a business relationship or expectancy, a plaintiff must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted." *Aon Consulting, Inc. v. Midlands Financial Benefits, Inc.*, 748 N.W.2d 626, 644 (Neb. 2008). BNSF contends that "Trimble cannot prove the third element because BNSF's actions were justified and cannot prove the fourth element because BNSF at no time asked Alstom to terminate Trimble's employment." (Filing 29, p. 8.)

> Restatement (Second) of Torts § 766 at 7 (1979) describes a cause
> of action similar to that which [the Nebraska Supreme Court has]

---

[7] In this regard, the NFEPA differs significantly from the Americans with Disabilities Act, which defines the term "discriminate" to include "participating in a contractual or other arrangement or relationship that has the effect of subjecting *a covered entity's qualified applicant or employee* with a disability to the discrimination prohibited by this subchapter[.]" 42 U.S.C. § 12112(b)(2) (emphasis supplied). Because this ADA section only applies to the covered entity's own employees or applicants, "[a] covered entity is not liable for the actions of the other party or parties to the contract which only affect that other party's employees or applicants." 29 C.F.R. § 1630.6(c). The NFEPA is not so limited.

11

recognized for intentional interference with a business relationship or expectancy, imposing liability upon one who "intentionally and improperly interferes" with the performance of a contract. The Restatement, *supra*, § 767 at 26-27, lists seven factors to consider in determining whether interference with a business relationship is "improper":

> (a) the nature of the actor's conduct,
>
> (b) the actor's motive,
>
> (c) the interests of the other with which the actor's conduct interferes,
>
> (d) the interests sought to be advanced by the actor,
>
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
>
> (f) the proximity or remoteness of the actor's conduct to the interference and
>
> (g) the relations between the parties.

In the introductory note to the Restatement, *supra*, ch. 37 at 7, that authority states that in making its analysis, the factfinder is to engage in a balancing process, noting: "The determination of whether an interference is improper depends upon a comparative appraisal of these factors. And the decision is, whether it was improper under the circumstances – that is under the particular facts of the individual case, not in terms of rules of law or generalizations." Furthermore, the Restatement, *supra*, § 767, comment b. at 28, notes:

> The issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to

> another. The decision therefore depends upon a judgment and choice of values in each situation. This Section states the important factors to be weighed against each other and balanced in arriving at a judgment; but it does not exhaust the list of possible factors.

*Huff v. Swartz*, 606 N.W.2d 461, 468 (Neb. 2000) (concluding that factors recited by Restatement for determining whether interference is "improper" should be used to determine whether interference is "unjustified" under Nebraska law).

Such a fact-intensive, comparative appraisal is not suitable for resolution on a motion for summary judgment. Nor can it be determined that BNSF did not cause Trimble's termination by asking Alstom to replace him with a different production supervisor, which is undisputed.

### *NFEPA Claim*

To establish a violation of the NFEPA, "a complainant has the burden of proving a prima facie case of discrimination, and once the complainant succeeded in that respect, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for rejection or discharge of the employee. Should the employer carry the burden, the employee must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination." *McCamish v. Douglas County Hosp.*, 466 N.W.2d 521, 525 (Neb. 1991). BNSF does not argue in support of its motion for summary judgment that Trimble is unable to prove a prima facie case of disability discrimination; BNSF only argues that there were legitimate, non-discriminatory reasons for its conduct.

BNSF's shop superintendent, Rick Stauffer, has submitted a declaration that he had a "concern as to whether it was permissible for Trimble to work indirectly for

13

BNSF by providing supervisory services to BNSF via the Alstom contract," and that he "was also concerned with Trimble's lack of credibility as a supervisor BNSF employees could respect for safety briefings or safety audits given Trimble's own poor safety record."  (Filing 30-2, p. 4.)  After consulting with BNSF's law department, Mr. Stauffer sent a letter to Alstom on October 12, 2007, which stated: "This is to advise that a written agreement between Mr. Kenneth Trimble and BNSF Railway dated October 1, 1992, permanently bars Mr. Trimble from working for BNSF at any time from this date forward.  Accordingly, please arrange as soon as possible to provide for appropriate substitution under our service agreement." (Filing 30-2, p. 4; filing 30-3.)

Whether the settlement agreement gave Mr. Stauffer a legitimate reason for requesting Alstom to replace Trimble does not depend upon the actual meaning of the release, but only upon whether he had a good faith belief that his action was proper. *Cf. McCullough v. University of Arkansas for Medical Sciences*, 559 F.3d 855, 862 (8th Cir. 2009) (critical inquiry in discrimination case was not whether employee actually engaged the conduct for which he was terminated, but whether employer in good faith believed that employee was guilty of the conduct justifying discharge). Trimble does not argue that Mr. Stauffer lacked a good faith belief that the release prohibited Trimble from working at the BNSF facility, nor is there any evidence in the record to support such an argument.  Trimble denies that BNSF had the right to request his removal under the service agreement with Alstom, but the terms of that agreement, which is not even in evidence, are irrelevant to the question of whether BNSF had a legitimate reason for making the request.

Trimble also has not produced any evidence to show that the reason stated in Mr. Stauffer's letter to Alstom was a pretext for discrimination.  While there may a triable issue concerning the additional reason cited by Mr. Stauffer in his declaration, including a factual dispute over Trimble's responsibilities as a production supervisor for performing safety briefings and safety audits, this does not preclude the entry of

14

summary judgment in favor of BNSF. "When an employer proffers multiple nondiscriminatory justifications for an allegedly retaliatory action, a showing of pretext as to one does not necessarily result in the absence of a legitimate explanation. Such a showing would only be sufficient if the remaining nondiscriminatory reason(s) are tied to the invalid reason." *Richey v. City of Independence*, 540 F.3d 779, 787 (8th Cir. 2008) (Shepherd, J., concurring) (internal quotations, punctuation, and citations omitted). Trimble's alleged lack of "credibility" as a supervisor is not intertwined with the alleged contractual prohibition against his working in any capacity at BNSF's facility.

Finally, Trimble argues in his brief that BNSF committed a "per se" violation of the NFEPA because Mr. Stauffer "would have had no legitimate reason to look at the confidential medical information of Trimble." (Filing 32, p. 16.) In this regard, Mr. Stauffer's declaration merely states that "[t]here is a note in Trimble's personnel file which indicates that Trimble is to be considered as an employee retired on disability and that he should not be rehired in any capacity based upon his agreement that the injuries he sustained on June 2, 1991, will forever and permanently disable him from returning to work for Burlington Northern Railroad Company, a predecessor of BNSF." (Filing 30-2, p. 4.) There is no evidence that Mr. Stauffer viewed any confidential medical information, nor does it appear that any such information was disclosed to Alstom. The NFEPA permits supervisors to be "informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations[.]" Neb. Rev. St. § 48-1107.02(9)(c) & (10).

Accordingly,

15

IT IS ORDERED that:

1. The defendant's motion to strike (filing 33) is denied.

2. The defendant's motion for summary judgment (filing 28) is granted in part and denied in part, as follows:
    a. The motion is granted with respect to the plaintiff's claim that the defendant violated the Nebraska Fair Employment Practice Act, and the second cause of action of the plaintiff's amended complaint is dismissed.
    b. In all other respects, the motion is denied.

July 1, 2009.	BY THE COURT:

                                       s/ *Richard G. Kopf*
                                       United States District Judge